UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VINCENT HOFFMAN, CURTIS TUCKER, ERIK SKOGLUND, MICHAEL COMPTON, and AARON BRUCE, on behalf of themselves and all other persons similarly situated, known and unknown, | ) ) ) ) ) ) | 12 C 7323 |
| | ) | Judge Feinerman |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| ROADLINK WORKFORCE SOLUTIONS, LLC, SCHNEIDER LOGISTICS, INC., and SCHNEIDER LOGISTICS TRANSLOADING AND DISTRIBUTION, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Vincent Hoffman, Curtis Tucker, Erik Skoglund, Michael Compton, and Aaron Bruce, on behalf of themselves and a putative class, bring this suit against RoadLink Workforce Solutions, LLC, Schneider Logistics, Inc., and Schneider Logistics Transloading and Distribution, Inc. (the two Schneider entities will be referred to together as "Schneider"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.*, and the Illinois Day and Temporary Labor Services Act ("IDTLSA"), 820 ILCS 175/5. Doc. 79. A week after suit was filed, Plaintiffs filed an amended complaint. Doc. 4. Several months later, Plaintiffs sought and were granted leave to file a second amended complaint. Docs. 16, 20. After several more months had passed and in response to numerous motions to dismiss and/or to strike, Docs. 34, 36, 38, 54, 59, 62, 65, Plaintiffs sought and were granted leave to file a third amended complaint, Docs. 78-79.

Counts I and II of the third amended complaint allege that RoadLink violated the FLSA by failing to pay the minimum wage and overtime wages. Doc. 79 at ¶¶ 48-65. Counts III and IV allege that Defendants violated the IMWL by failing to pay the minimum wage and overtime wages. *Id*. at ¶¶ 66-87. Count V alleges that Defendants violated the IWPCA by failing to pay all earned wages at the rate agreed to by the parties. *Id*. at ¶¶ 88-97. Count VI alleges that Defendants violated the IDTLSA by failing to pay a minimum of four hours pay at the agreed upon rate when Plaintiffs were contracted to work for a third party client company and utilized for less than four hours. *Id*. at ¶¶ 98-104. Count VII alleges that RoadLink violated the IWPCA by failing to pay for all earned paid time off as part of Plaintiffs' final wages. *Id*. at ¶¶ 105-113. Counts VIII and IX allege that Schneider violated the IDTLSA by failing to keep and remit accurate time records to RoadLink and by failing to provide Plaintiffs with Work Verification Forms. *Id*. at ¶¶ 114-125. Counts X and XI allege that RoadLink violated the IDTLSA by failing to provide Plaintiffs with proper Employment Notices and Wage Payment Notices. *Id*. at ¶¶ 126-139. And Count XII alleges that RoadLink unlawfully retaliated against Tucker and Bruce under the FLSA, IWPCA, and IDTLSA. *Id*. at ¶¶ 140-146.

Schneider has moved to dismiss all claims against it under Federal Rule of Civil Procedure 12(b)(6). Doc. 83. RoadLink has moved under Rule 12(b)(6) to dismiss Counts V-VI and X-XII and under Rule 12(f) to strike all references to Plaintiffs as "day or temporary laborers" or "laborers" and to RoadLink as a "day and temporary labor agency." Doc. 85. The court initially stayed discovery pending resolution of the motions, Doc. 89, but it lifted the stay upon tentatively concluding that the motions would be denied in substantial part, Doc. 100. For the following reasons, the motions are granted in part and denied in part.

**Background**

In considering a motion to dismiss, the court assumes the truth of the third amended complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the [third amended] complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are set forth as favorably to Plaintiffs as these materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

Schneider assists with managing operations in two Wal-Mart warehouses in Elwood, Illinois. Doc. 79 at ¶¶ 1, 19-20. As part of its contract with Wal-Mart, Schneider staffs the warehouses with laborers who unload Wal-Mart products from trucks and stock them for distribution. *Id*. at ¶ 2. Schneider staffed the warehouses with laborers it hired directly and also with laborers hired through staffing agencies with whom Schneider contracts, including RoadLink, to supplement its workforce for a temporary period. *Id*. at ¶¶ 3, 21, 22; Doc. 90 at 4, 6. RoadLink provided Schneider with unskilled or low-skilled laborers, who used Schneider's equipment at the warehouses and performed work integral to, not distinct from, the core of Schneider's business. Doc. 79 at ¶ 4; Doc. 90 at 6.

Plaintiffs were employed by RoadLink, sent to work at the Wal-Mart warehouses, and paid at or near the Illinois minimum wage. Doc. 79 at ¶ 26. Plaintiffs were not compensated for some of their compensable time, including: (1) pre-shift time, when they were "engaged to wait" at the warehouses at least fifteen minutes before the start of their scheduled shifts; (2) post-shift

time spent leaving work stations and exiting through security for unpaid half hour-lunch breaks and/or at the end of their shifts, a process that typically took about fifteen minutes; and (3) time spent working that RoadLink rounded down to the nearest fifteen minute interval. *Id*. at ¶ 23. Schneider failed to keep and remit to RoadLink accurate time records for Plaintiffs' work at the warehouses. *Id*. at ¶ 25. As a result, in many work weeks, Plaintiffs were paid less than the federal and Illinois minimum wage for all compensable time, and were denied overtime wages for weeks in which they worked more than forty hours. *Id*. at ¶¶ 27-29.

RoadLink regularly provided Schneider with more laborers than Schneider utilized at the Wal-Mart warehouses. *Id*. at ¶ 31. Those surplus laborers were utilized for less than four hours per day and were not compensated for a minimum of four hours pay at their regular rate. *Id*. at ¶ 32.

As part of its compensation package, RoadLink maintained a paid time off ("PTO") policy providing that a regular full-time employee could earn PTO after completing a certain length of service. *Id*. at ¶ 33. After three months of service, hourly associates would accrue 0.0196 PTO hours per regular hour worked up to a maximum of sixty PTO hours per calendar year; and after five years of service, hourly associates would accrue 0.0385 PTO hours per regular hour worked up to a maximum of eighty PTO hours per calendar year. *Ibid*. During the course of their employment with RoadLink, Plaintiffs earned PTO but they were not paid for or given all of their PTO when it became due and owing. *Id*. at ¶¶ 34, 36-38.

When Plaintiffs were dispatched to third party clients, RoadLink failed to provide Plaintiffs with Employment Notices in a form approved by the Illinois Department of Labor. *Id*. at ¶ 41. RoadLink also failed to provide Plaintiffs with Wage Payment Notices in the form of an itemized statement on the laborers' pay stub or on a form approved by the Illinois Department of

4

Labor. *Id*. at ¶ 42. Also, on numerous occasions, Schneider failed to provide Plaintiffs with a Work Verification Form when contracted to work a single day at Schneider. *Id*. at ¶ 44.

On September 14, 2012, the day after Plaintiffs filed this suit, RoadLink reduced Tucker's hours. *Id*. at ¶ 39. Shortly after Bruce complained about not being paid all of his earned wages, including minimum and overtime wages, RoadLink terminated him. *Id*. at ¶ 40.

## Discussion

### I. Schneider's Motion

#### A. Coverage Under the IDTLSA

The IDTLSA governs the activities of and imposes obligations on day labor and temporary labor service agencies. *See* 820 ILCS 175/5. The statute defines "[d]ay or temporary laborer" as "a natural person who contracts for employment with a day and temporary labor service agency," and "[d]ay and temporary labor service agency" as "any person or entity engaged in the business of employing day or temporary laborers to provide services, for a fee, to or for any third party client pursuant to a contract with the day and temporary labor service agency and the third party client." *Ibid*. The statute defines "[t]hird party client" as "any person that contracts with a day and temporary labor service agency for obtaining day or temporary laborers." *Ibid*. In addition to imposing its own substantive obligations on day and temporary labor service agencies and third party clients, the IDTLSA provides that "[i]f a third party client leases or contracts with a day and temporary service agency for the services of a day or temporary laborer, the third party client shall share all legal responsibility and liability for the payment of wages under the [IWPCA] and the [IMWL]." 820 ILCS 175/85(b).

Schneider submits that all of Plaintiffs' claims against it rest on the premise that RoadLink is a "day and temporary labor service provider" and that Schneider is a "third party

5

client" of RoadLink under the IDTLSA, and Schneider argues that the third amended complaint does not plausibly allege that either of these things is true. Doc. 83-1 at 2, 4-5. Plaintiffs do not dispute that all of their claims against Schneider rest on that premise; indeed, Counts VI and VIII-IX allege direct violations of the IDTLSA's substantive provisions, and Counts III-V allege that Schneider is derivatively liable under § 85(b) of the IDTLSA, which is quoted above, for RoadLink's violations of the IMWL and IWPCA. But Plaintiffs argue that the third amended complaint sufficiently pleads that RoadLink and Schneider are covered by the IDTLSA. Doc. 90 at 4-9. Plaintiffs are correct.

The governing pleading principles are settled. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "While a complaint … does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted). The court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (internal quotation marks omitted). However, "*Iqbal* makes clear that legal conclusions can provide the framework of a complaint so long as they are supported by factual allegations." *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013) (internal quotation marks omitted). Put another way, although the court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *Iqbal* holds that

6

determining whether a complaint suffices is "context-specific, requiring the reviewing court to draw on its experience and common sense," 556 U.S. at 664-65.

The third amended complaint adequately alleges that Schneider is a third party client and that RoadLink is a day and temporary labor service agency under the IDTLSA. Contrary to Schneider's contention, Plaintiffs support their position with several factual assertions in the third amended complaint and their response brief, which as noted above this court must consider to the extent it is consistent with the pleadings. *See Geinosky*, 675 F.3d at 745 n.1. Plaintiffs allege, for example, that Schneider supplemented its workforce in the Wal-Mart warehouses with laborers hired through RoadLink, a staffing agency; that those laborers were hired for temporary periods pursuant to a contract between RoadLink and Schneider; and that those laborers were unskilled or low-skilled workers who used Schneider's equipment and performed work integral to the core of Schneider's business. Doc. 79 at ¶¶ 3-4, 21-22; Doc. 90. at 4, 6.

It is unclear what more Plaintiffs should or even could have alleged to plead that Plaintiffs were day or temporary laborers employed by RoadLink, a day and temporary labor service agency who hired out laborers to Schneider, its third party client. It would be unreasonable at the pleading stage and violate settled precedent to demand additional, more specific allegations about, for example, the terms of the contract or fee arrangement between RoadLink and Schneider. *See Alexander v. United States*, 721 F.3d 418, 424 (7th Cir. 2013) ("Rule 8 does not demand that a plaintiff prove his case at the outset of the litigation, nor does it demand that a plaintiff come to court ready to plead facts … that he has no way of knowing prior to discovery."); *Geinosky*, 675 F.3d at 748 (holding that "where the alleged facts so clearly suggest" the essence of plaintiff's claim, the "general allegation that defendants 'intentionally treated plaintiff differently than others similarly situated' is sufficient" and "[t]o require more

would elevate form over substance."). Plaintiffs' allegations are more than sufficient to plead coverage under the IDTLSA.

### B. IWPCA Claim (Count V)

As noted above, Count V alleges that Schneider (along with RoadLink) violated the IWPCA by failing to pay Plaintiffs all earned wages at the rate to which the parties agreed. Doc. 79 at ¶¶ 88-97. The IWPCA does not establish a substantive right to payment of any particular regular or overtime wage. *See Dominguez v. Micro Ctr. Sales Corp.*, 2012 WL 1719793, at *1 (N.D. Ill. May 15, 2012); *DeMarco v. Nw. Mem'l Healthcare*, 2011 WL 3510896, at *6 (N.D. Ill. Aug. 10, 2011); *Hall v. Sterling Park Dist.,* 2011 WL 1748710, at *6 (N.D. Ill. May 4, 2011). Instead, it requires only that an employer "at least semi-monthly … pay every employee all wages earned during the semi-monthly pay period," 820 ILCS 115/3, with "wages" defined as "any compensation owed an employee by an employer *pursuant to an employment contract or agreement* between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation," 820 ILCS 115/2 (emphasis added). As the emphasized text makes clear, the IWPCA mandates payment of wages only to the extent the parties' contract or employment agreement requires such payment. *See Almy v. Kickert Sch. Bus Line, Inc.*, 722 F.3d 1069, 1075 (7th Cir. 2013) (holding that the IWPCA "entitles workers to the compensation owed under their employment agreement"); *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452-53 (7th Cir. 2012); *Dominguez*, 2012 WL 1719793, at *1; *DeMarco*, 2011 WL 3510896, at *6; *Lopez v. Smurfit-Stone Container Corp.*, 2003 WL 297533, at *3 (N.D. Ill. Feb. 10, 2003) ("The IWPCA [does] not create ... entitlement to overtime wages. In fact, the Seventh Circuit has stated that the IWPCA merely requires 'that the employer honor his contract.'") (quoting *Nat'l Metalcrafters v. McNeil*, 784 F.2d 817, 824 (7th Cir. 1986)). An "employment contract or

8

agreement" under the IWPCA need not be formally negotiated or written. *See Hess*, 668 F.3d at 452 ("Illinois courts have explained that an agreement under the IWPCA is 'broader than a contract.'") (quoting *Zabinsky v. Gelber Grp., Inc.*, 807 N.E.2d 666, 671 (Ill. App. 2004) (holding that the IWPCA "requires only a manifestation of mutual assent on the part of two or more persons; parties may enter into an 'agreement' without the formalities and accompanying legal protections of a contract")).

Schneider argues that Count V fails to state a viable IWPCA claim because it does not sufficiently allege that any contract or agreement required Defendants to pay the wages that Plaintiffs allege were not paid. Doc. 83-1 at 6-8. Schneider is correct. Count V alleges that "Plaintiffs had agreements within the meaning of the IWPCA to be compensated for all hours worked at the rates agreed to by the parties," and that "Roadlink did not pay Plaintiffs for all hours worked at the rates agreed to by the parties as described more fully in paragraph 23." Doc. 79 at ¶¶ 89-90. Paragraph 23, in turn, alleges that "[l]aborers who were hired by Roadlink and assigned to work at Schneider in the Wal-Mart Warehouse, including Plaintiffs, were not compensated for all compensable time" in that Plaintiffs were required "to appear at the Wal-Mart Warehouses at least 15 minutes before the start of their scheduled shift" and "to leave their work station and go through security to exit the building for an unpaid half hour lunch break and/or at the end of their shift, a process that typically took about 15 minutes," and also in that Defendants "[r]ound[ed] down the time worked by laborers to the nearest 15 minute interval in favor of Roadlink." *Id*. at ¶ 23.

Count V alleges two separate violations. The first is that Defendants did not pay Plaintiffs at the agreed-upon *rate*. But Plaintiffs do not allege what that rate was—that is, they fail to allege that Defendants agreed to pay them at a particular rate, be it nine dollars per hour or

9

ten dollars per hour—making it impossible to plausibly conclude that Defendants failed to pay the agreed-upon rate. *See Barker v. Atl. Pac. Lines*, 2013 WL 4401382, at *8 (N.D. Ill. Aug. 14, 2013) ("To state a claim under the IWCPA, the plaintiff must allege the existence of an agreement *substantiating entitlement to the wages and compensation sought*.") (emphasis added). And because the IWPCA requires only that the employer pay the agreed-upon rate, Plaintiffs' failure to allege that rate warrants dismissal of the wage rate component of Count V. *See Stark v. PPM Am., Inc.,* 354 F.3d 666, 672 (7th Cir. 2004) (rejecting an IWPCA claim for bonus pay where the employee "has no employment contract setting out the terms of his bonus"); *McLaughlin v. Sternberg Lanterns, Inc.*, 917 N.E.2d 1065, 1071 (Ill. App. 2009) (same); *Grant v. Bd. of Educ. of City of Chi.*, 668 N.E.2d 1188, 1196 (Ill. App. 1996) (rejecting an IWPCA claim for payment of accumulated unused sick leave where no contract required such pay). Plaintiffs will be given leave to replead this aspect of Count V, but if they do so, they must allege the wage terms of their contract or employment agreement.

The second violation alleged in Count V is that Defendants did not pay Plaintiffs for all of the *time* that they worked. As noted above, that time is alleged to consist of pre-shift work, post-shift work, and work in the final minutes of a shift that did not reach a full fifteen minute segment. Doc. 79 at ¶ 23. The trouble with Plaintiffs' submission, at least for purposes of an IWPCA claim, is that they do not allege that they had any agreement with Defendants requiring Defendants to compensate them for that time. Again, absent such an allegation, the time component of Count V fails to state a viable claim. *See DeMarco,* 2011 WL 3510896, at *6 (rejecting an IWPCA claim for hours worked off-the-clock where there was no evidence of any agreement requiring such pay); *Skelton v. Am. Intercontinental Univ. Online,* 382 F. Supp. 2d

1068, 1074-75 (N.D. Ill. 2005) (rejecting an IWPCA claim for overtime pay where no contract required such pay).

## II. RoadLink's Motion

### A. IWPCA Claims (Counts V and XII)

For the reasons given above, Count V, which is stated against both RoadLink and Schneider, is dismissed. RoadLink also seeks dismissal of Count XII, which alleges that RoadLink violated the IWPCA by retaliating against two of the plaintiffs, Tucker and Bruce, for asserting rights under the IWPCA. *See* 820 ILCS 115/14(c). RoadLink's only ground for dismissing Count XII is that Plaintiffs have failed to sufficiently allege an agreement under the IWPCA. Doc. 87 at 12-14. But the IWPCA claim against RoadLink in Count VII remains in the case—RoadLink did not move to dismiss it—which means that Plaintiffs have adequately pleaded that RoadLink failed to comply with an agreement within the meaning of the IWPCA. Count XII accordingly survives to the extent it alleges retaliation in violation of the IWPCA.

### B. IDTLSA Claims (Counts VI, X-XII)

Like Schneider, RoadLink contends that the IDTLSA claims should be dismissed because Plaintiffs fail to allege that they were "day or temporary laborers" entitled to relief under the IDTLSA. *Id.* at 9-11. For the reasons given above, RoadLink's argument is without merit, as is RoadLink's Rule 12(f) motion to strike all references to Plaintiffs as day or temporary laborers and to RoadLink as a day and temporary service agency.

RoadLink attacks Count VI, which alleges a violation of § 30(g) of the IDTLSA, on a separate ground. Section 30(g) states that any day or temporary laborer "who is contracted by a day and temporary labor service agency to work at a third party client's worksite but is not utilized by the third party client shall be paid by the day and temporary service agency for a

minimum of 4 hours of pay at the agreed upon rate of pay." 820 ILCS 175/30(g). The third amended complaint alleges that RoadLink violated § 30(g) by not paying Plaintiffs for a minimum of four hours pay when they were not utilized for a minimum of four hours. Doc. 79 at ¶¶ 31-32, 99. RoadLink contends that § 30(g) applies *only* to workers who are "not utilized," and *not* to workers who are underutilized or "utilized for … less than four hours," and therefore that Plaintiffs have no viable § 30(g) claim because they do not allege that they were not utilized at all. Doc. 87 at 11-12; Doc. 92 at 12-15.

RoadLink's interpretation of § 30(g), if adopted, would yield absurd results that the Illinois General Assembly could not possibly have intended. Under RoadLink's interpretation, a day laborer contracted to work at a third party client's site, but not utilized *at all*, must be paid for four hours work; by contrast, a day laborer contracted to work at a third party client's site, but utilized for at least *some* period of time less than four hours, even as short as fifteen minutes, must be paid only for the hours worked. That means that a day laborer not utilized at all gets four hours pay, while a day laborer utilized for fifteen minutes gets fifteen minutes pay.

RoadLink does not and could not possibly offer any reason to believe that the General Assembly intended to enact such a scheme. RoadLink instead argues that its interpretation is the best reading of § 30(g) from a grammatical perspective. In this, RoadLink is right; the statute, as written, is best read, and perhaps can only be read, as applying only to a laborer who "is *not* utilized by the third party client," not to a laborer who is *under*utilized by the third party client. 820 ILCS 175/30(g). The question here is whether § 30(g) should be given that literal reading under circumstances where it is beyond any reasonable dispute that the General Assembly did not intend that result.

Under *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), a federal court interpreting an Illinois statute must apply the rules of statutory construction applicable under Illinois law. *See U.S. Fire Ins. Co. v. Barker Car Rental*, 132 F.3d 1153, 1156 (7th Cir. 1997) ("in ascertaining the meaning of [an Illinois statute], we must apply the same rules of statutory construction that the Supreme Court of Illinois would apply if it were faced with the same task"); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 131 F.3d 625, 628 (7th Cir. 1997) ("What federal courts in diversity cases attempt to do, where statutory interpretation remains open, is to make a studied effort to determine how a state's highest court would interpret the law in question."). "In Illinois, the applicable principles of statutory construction are well established. The primary rule is that courts should ascertain and give effect to the intention of the legislature. To achieve that goal, we must regard the language of the statute as the best indication of legislative intent." *U.S. Fire Ins. Co.*, 132 F.3d at 1156 (citing *Abrahamson v. Ill. Dep't of Prof'l Regulation*, 606 N.E.2d 1111, 1118 (Ill. 1992)). That said, "when determining the meaning of a particular statutory provision, we ought to assume that the legislature did not intend an absurd result." *Id*. at 1157 (citing *Stewart v. Indus. Comm'n*, 504 N.E.2d 84, 86 (Ill. 1987)).

On that last point, and pertinent here, the Supreme Court of Illinois has held that "[w]here the intent of the legislature is otherwise clear, the judiciary possesses the authority to read language into a statute which has been omitted through legislative oversight," and that "[w]hen a literal interpretation of a statutory term would lead to consequences that the legislature could not have contemplated and surely did not intend, this court will give the statutory language a reasonable interpretation." *Wade v. City of N. Chi. Police Pension Bd.*, 877 N.E.2d 1101, 1116 (Ill. 2007); *accord*, *e.g.*, *DeLuna v. Burciaga*, 857 N.E.2d 229, 236 (Ill. 2006); *In re Application of Cnty. Treasurer*, 824 N.E.2d 614, 617 (Ill. 2005); *People v. Masterson*, 798 N.E.2d 735, 748

(Ill. 2003); *Collins v. Bd. of Trs. of Firemen's Annuity & Benefit Fund of Chi.*, 610 N.E.2d 1250, 1254 (Ill. 1993). Applying this principle, *Masterson* read the statutory definition of "mental disorder" from the Illinois Sexually Violent Persons Commitment Act into the Illinois Sexually Dangerous Persons Act, even though that Act included no such definition. 798 N.E.2d at 748-49. Likewise, *Wade* read this statute—"A disability pension shall not be paid *unless there is filed with the board certificates of the police officer's disability*, subscribed and sworn to by the police officer if not under legal disability, or by a representative if the officer is under legal disability, and *by* the police surgeon (if there be one) *and 3 practicing physicians* selected by the [police pension] board," 40 ILCS 5/3–115 (emphasis added)—as providing that a pension may be paid even if the three physicians did not file a certificate of the police officer's disability, reasoning that the literal reading of the statute "cannot be what the legislature intended." 877 N.E.2d at 1117-18.

This court's task is not to interpret § 30(g) using the principles articulated by the United States Supreme Court and the Seventh Circuit for interpreting federal statutes. There accordingly is no need to say whether RoadLink's interpretation of § 30(g) would prevail under those principles. *Compare King v. Burwell*, __ F.3d __, 2014 WL 3582800 (4th Cir. July 22, 2014), *with Halbig v. Burwell*, __ F.3d __, 2014 WL 3579745 (D.C. Cir. July 22, 2014). Rather, this court's task under *Erie* is to interpret § 30(g) as would the Supreme Court of Illinois. Given that the General Assembly could not possibly have intended the result that follows from RoadLink's interpretation of § 30(g)—grammatically correct as it is—and given that the Supreme Court of Illinois has repeatedly held that courts should "read language into a statute which has been omitted through legislative oversight," *Wade*, 877 N.E.2d at 1116, this court concludes that § 30(g) requires that four hours pay be given to *any* day laborer "contracted by a

day and temporary labor service agency to work at a third party client's worksite" who does not work the full four hours, regardless of whether the laborer worked no hours at all or some period of time less than four hours. Accordingly, RoadLink's motion to dismiss Count VI is denied.

## Conclusion

For the foregoing reasons, Schneider's and RoadLink's motions to dismiss are granted as to Count V and otherwise are denied, and RoadLink's motion to strike is denied. The dismissal of Count V is without prejudice and with leave to replead. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible."). If Plaintiffs wish to replead Count V, they must file a fourth amended complaint by August 22, 2014. If Plaintiffs do not do so, Defendants shall answer the surviving portions of the third amended complaint by August 29, 2014. If Plaintiffs file a fourth amended complaint with a repleaded Count V, Defendants shall answer or otherwise plead to Count V, and shall answer the remaining portions of the fourth amended complaint, by September 12, 2014.

August 1, 2014

_____
United States District Judge