**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VINCENT HOFFMAN, CURTIS TUCKER, ERIK SKOGLUND, MICHAEL COMPTON and AARON BRUCE, on behalf of themselves and all other persons similarly situated, known and unknown, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No. 12 C 7323 |
| v. | ) ) | Judge Feinerman |
| ROADLINK WORKFORCE SOLUTIONS, LLC, SCHNEIDER LOGISTICS, INC, and SCHNEIDER TRANSLOADING AND DISTRIBUTION, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
THE PARTIES' CLASS ACTION SETTLEMENT AGREEMENT AND FOR
APPROVAL OF CLASS CERTIFICATION FOR SETTLEMENT PURPOSES
ONLY, FORM AND MANNER OF CLASS NOTICE, AND SCHEDULING
OF A FAIRNESS HEARING FOR FINAL APPROVAL OF SETTLEMENT**

Plaintiffs, Vincent Hoffman, Curtis Tucker, Erik Skoglund, Michael Compton and Aaron Bruce (hereinafter "Plaintiffs"), on behalf of themselves and all others similarly situated, move this Court for an order preliminarily approving the Parties' Class Action Settlement Agreement, attached hereto as Attachment 1 (hereinafter, the "Settlement Agreement") and an order approving class certification for settlement purposes only, the form and manner of class notice, and scheduling a Fairness Hearing for final approval of settlement. In further support of this Unopposed Motion, Plaintiffs state as follows:

I.      BACKGROUND

A.      SUMMARY OF THE COMPLAINT

On September 13, 2012, Plaintiffs Vincent Hoffman, Phillip Bailey, Curtis Tucker and Erik Skoglund, on behalf of themselves and other similarly situated persons, filed a Complaint in the United States District Court for the Northern District of Illinois, generally alleging violations of the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* ("IMWL"), the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* ("IWPCA"), and the Illinois Day and Temporary Labor Services Act, 820 ILCS 175/1, *et seq.* ("IDTLSA") (hereafter the "Lawsuit"). On September 20, 2012, Plaintiffs filed a First Amended Complaint. On April 15, 2013, a Second Amended Complaint was filed by Plaintiffs, Vincent Hoffman, Curtis Tucker, Erik Skoglund, Michael Compton and Aaron Bruce on behalf of themselves and all other persons similarly situated. On August 28, 2013, a Third Amended Complaint was filed by the same Plaintiffs who filed the Second Amended Complaint. On August 22, 2014, a Fourth Amended Complaint, which is the operative Complaint in this matter, was filed by the same Plaintiffs named in the Second and Third Amended Complaints. The case is presently titled *Hoffman et al. v. RoadLink Workforce Solutions, LLC et al.,* Case No. 12 C 7323.

The genesis of the lawsuit is Plaintiffs claims that they were laborers assigned by RoadLink Workforce Solutions LLC ("RoadLink) to work as laborers at a warehouse in Elwood, IL operated by Schneider Logistics, Inc. and Schneider Transloading and Distribution, Inc. (collctive referred to as "Schneider.") Plaintiffs claim that RoadLink is a Day and Temporary Labor Service Agency, Schneider is a Third-Party Client, and Plaintiffs and that putative class members are Day and Temporary Laborers, as those terms are defined in the IDTLSA.  In the

Fourth Amended Complaint of the Lawsuit, Plaintiffs asserted the following twelve causes of action against RoadLink and Schneider:

Count I- a putative collective action against RoadLink claiming that RoadLink did not pay Plaintiffs and similarly situtated persons for all compensable time worked in violation of the FLSA;

Count II- a putative collective action against RoadLink claiming that RoadLink did not pay Plaintiffs and similarly situated persons overtime in violation of the FLSA;

Count III- a putative class action against RoadLink and Schneider alleging that RoadLink did not pay Plaintiffs and similarly situated persons for all compensable time worked, and that Schneider is jointly liable under the IDTLSA;

Count IV- a putative class action against RoadLink and Schneider alleging that RoadLink did not pay Plaintiffs and similarly situated persons overtime wages in violation of the IMWL, and that Schneider is jointly liable under the IDTLSA;

Count V- a putative class action alleging that RoadLink did not pay Plaintiffs and similarly situated persons for all compensable time worked in violation of the IWPCA, and that Schneider is jointly liable under the IDTLSA;

Count VI- a putative class action against RoadLink and Schneider alleging that RoadLink did not pay Plaintiffs and similarly situated persons a minimum four-hour show-up pay in violation of the IDTLSA, and that Schneider is jointly liable under the IDTLSA;

Count VII- a putative class action lawsuit against RoadLink alleging that RoadLink did not pay Plaintiffs and similarly situated persons accrued paid time off in violation of the IWPCA;

Counts VIII-XI- putative class action claims alleging violations of recordkeeping requirements under the IDTLSA (Count VIII, Schneider failed to remit work verification forms,

Count IX, Schneider failed to remit time records; Count X, RoadLink failed to remit Employment Notices, Count XI, RoadLink failed to remit Wage Payment Notices); and

Count XII- retaliation by Plaintiffs, Curtis and Bruce, against RoadLink in violation of the FLSA, IWPCA and IDTLSA.

On December 11, 2014, the Court granted the parties' joint motion to staythe Lawsuit pending mediation. On March 5, 2015, Plaintiffs and Defendants participated in a day long mediation session presided over by former Magistrate Judge Morton Denlow as mediator, during which they reached an agreement on all material terms in this matter on a class-wide basis.

While Defendants have denied and continue to deny any liability or wrongdoing of any kind whatsoever associated with the claims alleged by the Plaintiffs individually and on behalf of a class, specifically that their pay or employment practices failed to comply with the FLSA, IMWL, IWPCA and IDTLSA, Defendants believe it is in their best interest to resolve this matter without further litigation.

## B.    SUMMARY OF THE SETTLEMENT TERMS

As set forth more fully herein, counsel for Plaintiffs and the putative class performed extensive discovery in this matter and reviewed extensive records and other documents produced by Defendants for Plaintiffs and for the putative class. In addition to engaging in an informal exchange of documents, the parties engaged in extensive arms-length settlement negotiations, including negotiations that took place during an all-day mediation supervised by former Magistrate Judge Morton Denlow and resulted in the Stipulation of Settlement, attached hereto as Attachment 1. The parties believe they were fully and adequately informed of all facts necessary to evaluate the case for settlement and reached a settlement at the mediation session. Defendants continue to deny any wrongdoing, but evaluated the risk inherent in proceeding to trial along with the costs of litigation, and determined the settlement reached was an appropriate

compromise. Plaintiffs and their counsel likewise believe the settlement reached in this matter is a good outcome for Plaintiffs and the putative class. The material terms of the settlement are as follows, subject to approval by the Court:

1. **Class Definition**: The class of approximately 350 individuals allegedly owed damages is to be defined, for settlement purposes only, as:

   *All persons employed or hired by RoadLink Workforce Solutions, LLC ("RoadLink"), coded in RoadLink's payroll department to "IL-Elwood Schneider," who were paid or agreed to be paid at an hourly rate, and were assigned by RoadLink to perform work at the warehouse in Elwood, IL operated by Schneider Logistics, Inc., whether or not the employee actually performed work, from May 1, 2012 to June 1, 2013.*

2. **Settlement Amount and Distribution Formula**: Defendants shall make a total payment of $125,000.00 ("the Settlement Amount") into a Qualified Settlement Fund within fourteen (14) days of preliminary approval of this class-wide settlement by the Court. The Settlement Amount will be apportioned as follows:

   a. A payment of $2,000 to each of the five Named Plaintiffs as described in Section 13 of the Stipulation of Settlement, amounting to a total of Ten Thousand and 00/100 Dollars ($10,000.00) of the Settlement Amount as an Enhancement Award and in consideration for executing General Releases (something no other class member is being asked to do);

   b. Payment of costs associated with administering the Settlement Amount, including the fees and costs of the Claims Administrator;

   c. Payment of attorneys' fees and costs in an amount determined by the Court, but no more than one-third of the Settlement Amount; and

   d. Payment to class members who timely file valid claim forms of "the Class Settlement Fund," which is the remainder of the Settlement Amount less the enhancement awards to Named Plaintiffs in (a), less then costs associated with claims administration as referenced in (b), and less attorneys' fees and costs as provided for in (c), pursuant to the following distribution formula:

      i. All class members who timely file a valid claim form shall receive a minimum payment of One Hundred Dollars ($100.00) from the Class Settlement Fund;

      ii.   All class members who timely file a valid claim form shall also receive a *pro rata* share of the remaining balance of the Class Settlement Fund based on the number of shifts each worked during the class period as determined by RoadLink's payroll records, with the maximum amount received per shift to be Ten Dollars ($10.00); and

      iii.  In the event that any amount remains after the time has expired for each class member who has received a settlement payment to negotiate his or her settlement check, the remainder shall revert to Defendants.

**3. Release and Bar of Claims of Class Members:** All class members who do not exclude themselves from the settlement by filing timely "opt out" notices with the Court shall be deemed to have released the Released Parties from all claims raised in the Fourth Amended Complaint arising under the FLSA, IMWL, IWPCA and IDTLSA for the Settlement Period.

## II.    STANDARD FOR PRELIMINARY APPROVAL

The settlement or compromise of a class action requires district court approval. Fed. R. Civ. P. 23(e). The law encourages settlement of class actions, and a voluntary settlement is the preferred method of class action resolution. *Redman v. Radioshack Corp.*, No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880, at *9 (N.D. Ill. 2014) (*citing Isby, et al. v. Bayh, et al.*, 75 F.3d 1191, 1196 (7th Cir. 1996)).

In ruling on a motion for preliminary approval of a class action settlement, the district court must determine whether the proposed settlement is within a "range of reasonableness," such that sending notice to the class is warranted. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("in assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation,") (internal citations omitted). If the proposed agreement presents no apparent defects or other indicia of unfairness, then the court should direct that notice of a fairness hearing

be given to the class members, where evidence and argument may be presented for and against the proposed settlement. *Staton v. Boeing Co., Inc*., 327 F.3d 938 (9th Cir. 2003).

### III.     CERTIFICATION OF CLASS IS APPROPRIATE

A district court has broad discretion in determining whether the parties have made a showing that class certification is appropriate. *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir. 1998). In evaluating the fairness, reasonableness, and adequacy of the settlement, the court should view the facts in a light most favorable to the settlement. *Isby*, 75 F.3d at 1199. The court should not substitute its own judgment as to the best outcomes for litigants and their counsel. *Armstrong v. Bd. of Sch. Dirs*., 616 F.2d 305, 315 (7th Cir. 1980). The court's role is to determine whether Plaintiffs are asserting a claim which, assuming its merits, would satisfy the requirements of Rule 23. *See* H. Newberg on Class Actions, §24.13 at 60 (3d ed. 1992)(hereafter "Newberg"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171 (1974).

#### A.     Plaintiffs' Claims Should be Certified as a Class Action

Rule 23 requires a two-step analysis to determine whether class certification is appropriate. A plaintiff must satisfy the requirements of Fed. R. Civ. P. 23(a) and fall within at least one of the categories identified in Rule 23(b). *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)(citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982). First, the action must satisfy all four requirements of Rule 23(a). That is, "the plaintiff must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Id*.

Second, the action must satisfy one of the conditions of Rule 23(b). *Id*. Rule 23(b) is satisfied on a showing of one of three circumstances: (1) separate lawsuits would create the risk of inconsistent judgments or would be dispositive of the interests of nonparty class members; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with

7

respect to the class as a whole; or (3) questions of law or fact common to the class predominate over questions affecting individual members, and the class action is superior to other available methods. Fed. R. Civ. P. 23(b)(1) – (3).

Plaintiffs' claims meet the requirements for class treatment of this Lawsuit.[1]

## 1. Certification Under Rule 23(a)

### a. Numerosity -- Rule 23(a)(1)

The class is so numerous that joinder of all members is impracticable. When analyzing whether joinder is impracticable, factors such as judicial economy, geographic diversity of class members, and the ability of class members to institute individual lawsuits should also be considered. *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996). To determine whether joinder is impracticable courts must consider the circumstances unique to each case. *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1966). "To require a multiplicity of suits by similarly situated small claimants would run counter to one of the prime purposes of a class action." *Id.* at 1333. In this case, the parties have established that the class is composed of approximately 350 individuals. The size of this putative class easily satisfies Rule 23(a)(1).

### b. Commonality -- Rule 23(a)(2)

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). "[C]ommonality requires the plaintiffs to demonstrate that the class members have suffered the same injury." *Jamie S. v. Milwaukee Pub. Schs*, 668 F.3d 481, 484 (7th Cir.

---

[1] Defendants believe that class certification is warranted for settlement purposes only, and reserve all defenses to class certification in the event that the settlement class is not certified. To the extent that Plaintiffs' arguments are not specifically limited to "for settlement purposes only," Defendants do not join in them, and specifically reserve their right to argue that class certification is not appropriate should the Settlement not by Finally Approved, or should it become void for any other reason per *Carnegie v. Household International, Inc.*, 376 F.3d 656 (7th Cir. 2004).

2012). (internal quotation marks omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). In order to satisfy this requirement, there needs to be just one common question of law or fact but that common question cannot be just a superficial similarity. *Dukes*, 131 S. Ct. at 2556; *Jamie S.*, 668 F.3d at 497. Not only must the class claims "depend on a common contention," that common contention "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551; *Jamie* S., 668 F.3d at 497.

Here, Plaintiffs' claims are based on questions of fact and law common to the class. Each class member was allegedly assigned by RoadLink to perform work for an hourly rate of pay at a warehouse in Elwood, IL operated by Schneider. Each class member was subject to the same compensation and record keeping policies during the class period, including, for example: a) RoadLink's alleged practice of requiring Plaintiffs and putative class members assigned to Schneider to appear at the facility prior to the start of their shift for which they were not compensated; b) RoadLink's alleged practice of requiring Plaintiffs and putative class members to participate in pre-shift meetings for which they were not compensated; (c) RoadLink's alleged practice of not compensating Plaintiffs and putative class members for time spent cleaning up at the end of their shifts; d) RoadLink's alleged practice of deducting one half-hour from Plaintiffs' and putative class members' wages for unpaid breaks, which they were frequently not able to take; e) RoadLink's alleged practice of not paying Plaintiffs and putative class members a minimum of four-hour show-up pay; f) RoadLink's alleged failure to provide Plaintiffs and putative class members with Employment Notices and Wage Payment and Notices; g) Schneider's alleged joint liability to Plaintiffs and putative class members for RoadLink's alleged compensation practices; and h) Schneider's alleged failure to remit to RoadLink time

9

records, and to provide Plaintiffs and putative class members with Work Verification forms. The resolution of these questions will resolve the matter for the entire class.

### c.     Typicality -- Rule 23(a)(3)

The question of typicality is closely related to the preceding question of commonality. The Seventh Circuit has held that a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). To meet the typicality requirement, there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group. *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). In this case, the claims of Plaintiffs and putative class members arise from the same alleged conduct of Defendants described in section III.A.(1)(b), *supra*.

### d.     Adequacy of Representation -- Rule 23(a)(4)

Rule 23(a)(4) requires that the named class representative "will fairly and adequately protect the interests of the class." "The adequacy of representation requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the named representative must have a "sufficient interest in the outcome to ensure vigorous advocacy; and, (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Lau v. Arrow Fin. Servs., LLC*, 2007 U.S. Dist. LEXIS 40066, 17 (N.D. Ill. 2007)(citing *Sledge v. Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998); *Gammon v. GC Servs. Ltd. P'ship.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995)). The burden of demonstrating that the class representative is adequate is not heavy" *Sledge*, 182 F.R.D. at 259.

10

Plaintiffs satisfy this standard in the case at bar. Plaintiffs do not have antagonistic or conflicting claims with other members of the class. Plaintiffs and the putative class members were all employed by Defendant RoadLink and assigned to performed work at the same warehouse in Elwood, IL operated by Schneider; they all allege that they are entitled to unpaid wages for performing compensable work and for the minimum four-hour show-up pay provided under the IDTLSA; and they all seek to recover statutory damages for alleged notice violations under the IDTLSA. Plaintiffs also have a sufficient interest in the outcome to ensure vigorous advocacy. Adequacy requires the named plaintiff to be conscientious and to "understand the basic facts underlying his claims." *Id*. Plaintiffs in this case understand the general foundation of the case; have participated extensively in its prosecution; assisted counsel for Plaintiffs and the putative class in reviewing and analyzing documents produced by Defendants; and participated, either in person or by telephone, in an all day mediation to explore an amicable resolution of this matter. This qualifies Plaintiffs as "conscientious representative plaintiffs" and satisfies this element. *Robles v. Corporate Receivables, Inc*., 220 F.R.D. 306, 314 (N.D. Ill. 2004).

As explained, *infra*, Section V(C), counsel for Plaintiffs and the putative class are qualified and able to conduct the proposed litigation vigorously.

**B.    This Action Satisfies the Requirements of Rule 23(b)**

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one of the subdivisions of Rule 23(b). Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiffs seek certification under Rule 23(b)(3). *See Allen v. International Truck and Engine Corp*., 358 F.2d 469, 472 (7th Cir. 2004).

Rule 23(b)(3) allows an action to be maintained as a class action if the court finds that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual class members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining "superiority," the court should look to non-exhaustive factors: the interest of class members in individually controlling separate actions, any litigation concerning the controversy already commenced, the desirability or undesirability of concentrating the litigation, and the manageability of the class action. *Id.* The Seventh Circuit has concluded that classes seeking substantial damages may be certified under Rule 23(b)(3). *Jefferson v. Ingersoll International Inc.*, 195 F.3d 894, 898 (7th Cir. 1999). The courts have certified similar class claims seeking unpaid wages and statutory penalties under Rule 23(b)(3). *See De Leon-Granados v. Eller and Sons Trees, Inc.*, 497 F.3d 1214 (11th Cir. 2007) (claim for unpaid wages under the Migrant and Seasonal Agricultural Worker Protection Act (AWPA)); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 612-14 (C.D. Cal. 2005) (claim, *inter alia*, for unpaid wages and itemized payroll statements under California law).

The common questions of law and fact in this case predominate over any individual issues. The dominant legal issue is whether Defendants' alleged compensation and recordkeeping policies violated the FLSA 29 U.S.C. §201 *et seq.*, the IMWL 820 ILCS 105/1, *et seq.*, the IWPCA, 820 ILCS 115/1, *et seq.*, and the IDTLSA, 820 ILCS 175/1, *et seq.* The predominance requirement is also satisfied where a "common nucleus of operative fact," for which the law provides a remedy, exists among all class members. *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 310 (N.D. Ill. 1995). In this case, there is a common nucleus of operative fact that concerns Defendants' alleged compensation and recordkeeping policies.

Further, a class action is superior to other methods of adjudication in this case. Judicial economy and efficiency, as well as consistency of judgments would be achieved through the certification of the class. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill 1992). The alternative is potentially *hundreds* of individual lawsuits and piecemeal litigation.

## C.  Plaintiffs' Counsel Should be Appointed Class Counsel

Rule 23(g) requires that courts consider the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims, (2) class counsel's experience in handling complex litigation and class actions, (3) counsel's knowledge of the applicable law, and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g). In this case, all these requirements are met. Plaintiffs' attorneys have extensive experience and expertise in complex employment litigation and class action proceedings, and are qualified and able to conduct this litigation. Plaintiffs' counsel, Christopher J. Williams and Alvar Ayala, have been lead counsel or co-counsel in over 300 wage and hour cases filed in the Circuit Court of Cook County and the Northern District of Illinois. The majority of these cases set forth class claims under the FLSA, the IMWL, the IWPCA and the IDTLSA and have proceeded as class actions and/or collective actions under §216(b) of the FLSA.[2]

---

[2] Plaintiffs' counsel has regularly been designated as class counsel in class action employment litigation including: *Alvarado et al. v. Neptun Light, Inc. et al.*, Case No. 13 C 3199 (Final Approval 5/7/15); *Alvarado et al. v. Aerotek*, Case No. 13 C 6843 (Final Approval 1/29/2015); *Dickerson v. Rogers' Premier Enterprises, LLC* Case No.13 C 7154 (Final Approval 01/07/15); *Hernandez v. ASG Staffing, Inc.*, Case No. 12-2068 (Final Approval 12/11/14); *Blancas et al. v. Cairo and Sons Roofing, Co. Inc.*, Case 12 C 2636 (Final Approval 12/12/2013); *Dean et al. v. Eclipse Advantage Inc., et al* Case 11-C-8285 (Final Approval 12/17/2013); *Gallegos et al v. Midway Building Services, LTD et al.*, Case No. 12-C-4032 (Final Approval 10/02/2013); *Craig v. EmployBridge et al.*, Case No. 11-C-3818 (Final Approval 04/04/13); *Smith et al. v. Dollar Tree Distribution, Inc.*, Case No. 12-C-3240 (Final Approval 2/27/13); *Ramirez et al. v. Paramount Staffing of Chicago, Inc.*, Case No. 11-C-4163 (Final Approval 1/29/13); *Bautista et al v. Real Time Staffing, Inc.*, Case No. 10-C-0644 (Final Approval 09/06/12); *Ochoa et al v. Fresh Farms International Market, Inc. et al.*, Case No.11-C-2229 (Final Approval 07/12/12); *Jones et al v. Simos Insourcing Solutions, Inc.*, Case No. 11-C-3331 (Final Approval 05/04/12); *Francisco et al v.*

## IV.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.     Settlement and Class Action Approval Process

"Federal courts naturally favor the settlement of class action litigation." <u>Isby</u>, 75 F.3d at 1196; *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (gathering cases). The traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual putative class members, would be impracticable. The proposed settlement therefore is the best vehicle for putative class members to receive the relief to which they claim they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1)    Preliminary approval of the proposed settlement at an informal hearing;

(2)    Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)    A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Compl. Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by class action commentator Prof. Herbert Newberg, safeguards class members' due

---

*Remedial Environmental Manpower, Inc. et al.,* Case No. 11-C-2162, (Final Approval 04/25/12); *Alvarez et al v. Staffing Partners, Inc. et al.,* Case No. 10-C-6083 (Final Approval 01/17/12); *Craig et al v. Staffing Solutions Southeast, Inc.,* Case No. 11-C-3818 (Final Approval 06/06/11); *Andrade et al v. Ideal Staffing Solutions, Inc. et al.,* Case No. 08-C-4912 (Final Approval 03/29/10); *Arrez et al v. Kelly Services, Inc.,* Case No. 07-C-1289 (Final Approval 10/08/09); *Acosta et al v. Scott Labor LLC et al.,* Case No. 05-C-2518 (Final Approval 03/10/08); *Ortegon et al v. Staffing Network Holdings, LLC et al.,* Case No. 06-C-4053 (Final Approval 03/13/07); *Garcia et al v. Ron's Temporary Help Services, Inc. et al.,* Case No. 06-C-5066 (Final Approval 04/03/07); *Camacho et al v. Metrostaff, Inc. et al.,* Case No. 05-C-2682 (Final Approval 05/17/06).

process rights and enables the court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.*

With this Motion, Plaintiffs request that this Court take the first step in the settlement approval process by granting preliminary approval of the proposed settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.* at § 11.25 at 11-36, 11-37. The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion).

The Court's grant of preliminary approval will allow all putative class members to receive notice of the proposed settlement's terms and of the date and time of the fairness hearing, at which putative class members may be heard regarding the settlement, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. *See Manual for Compl. Lit.*, at §§ 13.14, 21.632. Neither formal notice nor a hearing is required at the preliminary approval stage; the court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the court's discretion. *Id.* § 13.14.

### B. The Criteria for Preliminary Settlement Approval Are Satisfied.

1. **The proposed settlement offers a beneficial resolution to this litigation, thus warranting both this Court's preliminary approval and an opportunity for the putative class members to consider its terms.**

A proposed settlement may be approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, at 1276. In affirming the trial court's approval of the settlement in *City of Seattle*, the Ninth Circuit noted that it "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* at 1291 (internal quotation and citation omitted). The district court's ultimate determination "will involve a balancing of several factors" which may include:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel . . . and the reaction of the class members to the proposed settlement.
>
> *Id.*

As various courts have noted, "the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement" is viewed as the "most important factor relative to the fairness of a class action settlement." *Redman*, 2014 U.S. Dist. LEXIS 15880, at *9.

In this case, Defendants have advanced various arguments that they believe are viable defenses in this matter and, at a minimum, demonstrate that prevailing on the merits or even certifying a class is uncertain if this matter proceeds in the absence of a settlement.

Given Defendants' defenses on the merits, and the difficulties of proof, the terms of the Stipulation of Settlement compromising the class are fair and reasonable. Counsel for all parties are experienced in class action litigation. The parties negotiated a Class Settlement Fund, which counsel for Plaintiffs and the putative class believe will provide putative class members who

make a successful claim on the Class Settlement Fund with substantial monetary relief based on Plaintiffs' theory of liability. Given the potentially viable defenses asserted by Defendants, the recovery that Plaintiffs and putative class members will receive warrants approval of this settlement.

**2.      The Settlement Was Reached Through Arm's-Length Negotiations.**

A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair. *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)(internal citation omitted). *See also Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair.")

The settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of wage and hour violations in particular. In negotiating this settlement, Plaintiffs' counsel had the benefit of years of experience advocating the interests of low-wage laborers combined with an in-depth familiarity with the facts of this case. In addition, counsel for Plaintiffshave successfully litigated and resolved over 30 class actions involving low-wage laborers in the temporary staffing industry. Similarly, counsel for Defendants are experienced class action litigators.

Settlement negotiations in this case took place over the course of several months. After a period of extensive investigation and discovery, frequent meetings between counsel for Plaintiffs and the putative class , and an all-day mediation facilitated by former Magistrate Judge Denlow on March 5, 2015, the parties reached agreement to resolve this litigation, the terms of which are reflected in the Stipulation of Settlement attached hereto as Attachment 1. Plaintiffs' counsel

17

supports the resulting settlement as fair and as providing reasonable relief to the members of the putative class.

### 3.    The Settlement Provides Substantial Relief for Putative Class Members

The settlement provides substantial relief for all putative class members. All putative class members, who timely file with the court valid claim forms, will receive a minimum $100 payment, plus a *pro rata* share of the balance of the Class Settlement Fund for each shift worked during the settlement period up to a cap of $10.00 per shift (roughly equivalent to an additional hour of pay per shift worked). The parties' formula for calculating settlement payments will also ensure that the fund is distributed in proportion to the time that each Plaintiff and putative class member was exposed to the alleged violations.

### 4.    Payments to the Plaintiffs are Appropriate and Reasonable.

Plaintiffs shall receive payments from the Settlement Amount as specified in Section 13 of the Stipulation of Settlement, for their role in litigating this matter and for executing a general release.   For purposes of their claims for unpaid wages and statutory damages for notice violations under the IDTLSA, Plaintiffs' recovery will be equivalent to that of other putative class members as their settlement share will be calculated the exact same way as all other putative members of the class. As a result, Plaintiffs are not receiving preferential treatment in the settlement of their claims for unpaid wage and statutory damages for notice violations under the IDTLSA.

### 5.    Plaintiffs' Request for Fees and Costs is Fair and Reasonable

The Stipulation of Settlement provides that Plaintiff's counsel will petition the Court for its reasonable attorneys' fees and costs for no more than one-third of the Settlement Amount for all attorneys' fees and costs incurred and to be incurred in seeing this matter through Final Approval, including: (i) obtaining Preliminary Approval from the Court; (ii) responding to

inquiries from and otherwise assisting putative class members regarding the settlement; (iii) assisting in the review of claims submitted by putative class members; (iv) assisting in resolving any objections; and (v) defending the settlement and securing the Final Order, including the conduct of any appellate action.

When the amount of the settlement in this case was negotiated, Defendants' offer was an "all in" global settlement offer, which included all aspects of the settlement consideration relief to the class, attorneys' fees, expenses, and costs. Such settlements, known as "common fund" settlements, are preferred by the law and fees are awarded from such settlement funds by the Court under "common fund" principles.

It is well settled under the "common fund" doctrine that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gement,* 444 U.S. 472, 478 (1980). The common fund doctrine permits plaintiffs' counsel to petition the court for fees out of a common fund created for the benefit of the plaintiff class. *Id.* The common fund doctrine is based on the idea that "those who have benefited from the litigation should share its costs." *Id.* at 563 (*citing Skelton v. General Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1989) (common fund principles "properly control a case which is initiated under a statute with a fee shifting provision, but is settled with the creation of a common fund"). Where a common fund is created in return for release of a defendant's liability for damages and for statutory attorneys' fees, the district court's award of fees must be guided by equitable fund principles. *Skelton*, 860 F.2d at 256.

In 1984, the Supreme Court observed that, under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Since *Blum*, a majority of the circuits, including this Circuit, have affirmed that the percentage-of-the-fund method is available to the district court. *Blackburn v.*

*Sundstrand Corp.*, 115 F.3d 493, 494 (7th Cir. 1997). "The common fund doctrine rests upon the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). When determining a reasonable fee in a class action settlement, courts in the Seventh Circuit typically use the percentage basis rather than a lodestar or other basis. *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998). In deciding fee levels in common fund cases, the Seventh Circuit has consistently directed district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007)(*quoting In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)). The normal rate of compensation in the market is one-third of the common fund recovered because the class action market commands contingency fee agreements and the class counsel accepts a substantial risk of nonpayment. *George v. Kraft Foods Global, Inc*., 2012 U.S. Dist. LEXIS 166816, 7-9 (N.D. Ill. 2012). *See also Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998)(The typical contingent fee is between 33 and 40 percent in common fund cases.) *See also Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. Ill. 2007)(vacating district court's decision to cap fees at 15% of multi-million dollar common fund after finding court misapplied common fund doctrine in case involving fee-shifting statute); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)(vacating district court's decision to cap fees at 10% of multi-million dollar common fund after finding court had failed to follow market-based approach).

The percentage-of-the-fund method is commonly used in awarding attorneys' fees in class action settlements of wage and hour cases brought under the IMWL, the IWPCA, and the IDTLSA, by both federal and state court judges.

Plaintiffs' counsel will file a petition for fees and costs that will not exceed one-third of the Settlement Amount, which is typical of amounts of awards made and fees negotiated in the Chicago area.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs make the unopposed request that the Court: (i) grant this Motion for Preliminary Approval of the Stipulation of Settlement; (ii) approve class certification of the class defined herein; (iii) approve the Notice of Class Action, Proposed Settlement and Hearing; (iv) authorize notice to the Class; (v) set a date for the Fairness Hearing; (vi) enter the Proposed Order of Preliminary Approval attached to the Settlement Agreement (Attachment 1) as Exhibit F; and (vii) grant all further relief deemed just and proper.

Respectfully submitted,

Dated: July 28, 2015

*s/Christopher J. Williams*
Christopher J. Williams
Alvar Ayala
Workers' Law Office, PC
53 W. Jackson Blvd., Suite 701
Chicago, Illinois 60604
(312) 795-9121

Attorneys for Plaintiff